PEOPLE v MARSACK

Docket No. 186506. Submitted June 3, 1998, at Lansing. Decided August 21, 1998, at 9:35 A.M.

Richard P. Marsack was convicted by a jury in the Crawford Circuit Court, Alton T. Davis, Jr., J., of first-degree, premeditated murder. The defendant appealed.

The Court of Appeals *held*:

1. The prosecution presented sufficient evidence from which the jury could find beyond a reasonable doubt that the defendant was guilty of first-degree, premeditated murder. Premeditation and deliberation could be inferred from evidence indicating that the defendant had carried out a plan to ambush and kill his work supervisor when he chopped down a tree to block the path of the victim's truck, hid and waited for the truck to pass by, and then fired a shotgun at the victim when the victim got out of the truck. Physical evidence linking the defendant to the murder included the shotgun and the ax used to chop down the tree. Both were found near the scene of the crime. The shotgun was registered to the defendant, and the defendant's son identified the ax as belonging to the defendant. There was also evidence that the defendant's vehicle was seen near the scene of the crime and that the defendant attempted to flee after the police started investigating the crime and the defendant's involvement in it.

2. The defendant's right to counsel under the Fifth Amendment was not violated when the police, during a voluntary, noncustodial interview of the defendant and after he indicated that he wanted to consult an attorney, obtained the defendant's consent to a search of his clothing and home and to a test for gunpowder residue on his person. The Fifth Amendment protects against compelled incriminating evidence of a testimonial or communicative nature, not against compelled production of physical evidence as in this case.

3. The defendant's right to counsel under the Sixth Amendment was not violated when the police obtained the defendant's consent to the searches after he requested an attorney. The Sixth Amendment right to counsel attaches at critical stages of a criminal proceeding following the initiation of adversarial legal proceedings

against the defendant by way of indictment, information, formal charge, preliminary hearing, or arraignment. A request for a consent to search before the initiation of adversarial legal proceedings, as occurred in this case, is not a critical stage to which the Sixth Amendment right to counsel applies.

4. The trial court did not clearly err in deciding that, under the totality of the circumstances, the defendant voluntarily waived his right under the Fourth Amendment to be free from unreasonable searches and seizures when he consented to the searches, and that no violation of the Fourth Amendment occurred.

5. The trial court did not abuse its discretion in not suppressing evidence pursuant to the "fruits of the poisonous tree" doctrine, *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), inasmuch as the defendant's rights under the Fourth, Fifth, and Sixth Amendments were not violated.

6. The trial court did not err in refusing the defendant's request that the jury be instructed that the prosecution had the burden of disproving any reasonable theory of innocence presented by the circumstances. The prosecution is not required to negate every reasonable theory consistent with the defendant's innocence; it is only required to prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may produce.

Affirmed.

1. CRIMINAL LAW — SUFFICIENCY OF EVIDENCE — APPEAL.

An appellate court's review of the sufficiency of the evidence to sustain a conviction turns not on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt.

2. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATED MURDER.

A defendant may be convicted of first-degree murder only where the prosecution proves that the defendant intentionally killed the victim and that the killing was premeditated and deliberate; premeditation and deliberation require sufficient time to allow the defendant to take a second look.

3. CONSTITUTIONAL LAW — PRIVILEGE AGAINST SELF-INCRIMINATION.

The Fifth Amendment protects against compelled incriminating evidence of a testimonial or communicative nature, not against compelled production of physical evidence (US Const, Am V).

4. CONSTITUTIONAL LAW — RIGHT TO COUNSEL — SIXTH AMENDMENT.

> The Sixth Amendment right to counsel attaches at critical stages of a criminal proceeding; a request by the police that a person consent to a search before the initiation of legal proceedings against the person is not a critical stage to which the Sixth Amendment right to counsel attaches (US Const, Am VI).

5. SEARCHES AND SEIZURES — CONSENT — APPEAL.

> A person waives the Fourth Amendment right to be free from unreasonable searches and seizures by freely and intelligently giving unequivocal and specific consent to a search; a trial court reviews the totality of the circumstances when deciding the validity of a consent to search, and the Court of Appeals reviews the trial court's decision for clear error (US Const, Am IV).

6. CRIMINAL LAW — PROSECUTION — BURDEN OF PROOF.

> The prosecution need not negate every reasonable theory consistent with a defendant's innocence; it must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may produce.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John Huss*, Prosecuting Attorney, and *William E. Molner*, Assistant Attorney General, for the people.

State Appellate Defender (by *Debra A. Gutierrez*), for the defendant on appeal.

Before: SAWYER, P.J., and KELLY and DOCTOROFF, JJ.

KELLY, J. On March 13, 1995, defendant was convicted by a jury of one count of first-degree, premeditated murder, MCL 750.316; MSA 28.548. On April 13, 1995, he was sentenced to a mandatory term of life in prison without the possibility of parole. Defendant appeals as of right from the amended judgment of sentence. We affirm.

### I. BACKGROUND

Defendant's conviction arises from the July 13, 1993, shooting death of Terrence Barr, defendant's supervisor. Both Barr and defendant were employees of the state's Department of Natural Resources (DNR) in the Parks and Recreation Division. Defendant was a water sites operator in the Gaylord DNR office. Barr was the supervisor for the Gaylord and Grayling offices.

On the day of the shooting, Barr left home for work at approximately 6:45 A.M. This was Barr's normal departure time for work in the summer. At approximately 7:00 A.M., Barr's body was found in a ditch off to the side of Wilcox Bridge Road. At a later autopsy, it was determined that Barr had been fatally shot in the chest by a 12-gauge shotgun slug. His truck was parked along the side of the road with a fallen tree obstructing traffic on the road. Witnesses testified that a fallen tree had been lying across the road at approximately 6:15 A.M., at 6:25 A.M., and at 6:50 A.M. There was evidence of wood chips and shavings at the base of the tree stump, indicating that the tree had been intentionally cut down with an ax. Some of these same witnesses observed seeing a green DNR truck in the area before the shooting.

On the day of the shooting, defendant was scheduled to have a meeting with Barr. The day before the shooting, defendant told a fellow employee that he intended to skip work in order to avoid having the meeting with Barr. Defendant, on several occasions, informed other employees that he thought Barr was out to get him fired.

Because defendant was scheduled to meet with Barr on the day of the shooting, the police wanted to

talk with defendant. A Crawford County sheriff's deputy and a detective sergeant with the Michigan State Police located defendant at a tire store at 3:10 P.M. on the afternoon of the day of the shooting. *Miranda*[1] warnings were not given at this time. The officers identified themselves and asked defendant about his meeting with Barr that morning. When asked why he did not attend the meeting, defendant simply stated, "I just didn't go." When asked if defendant owned any guns, defendant responded that he did not own guns. Upon further inquiry, defendant stated that he had owned guns in the past, but that he presently did not own any firearms.

The officers then asked defendant if he was willing to answer more questions at the police station since a small crowd had gathered outside the tire store. Defendant agreed and followed the officers in his DNR vehicle. At the station, the officers told defendant that many people had stated that he, in fact, did own several guns. At this point, defendant stated: "I'm no match for you. I want to talk to an attorney." The questioning by the officers then stopped.

At this point, the officers wanted defendant's permission to search his clothing and home and to perform an atomic absorption test to check for gunpowder residue. Defendant was informed of his *Miranda* rights and was read three consent to search forms. All three consent forms were signed by defendant. At no point was defendant in custody or placed under arrest.

Defendant accompanied the officers to his home in an unmarked police car. Defendant was wearing

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

prison clothing because his personal clothing was being analyzed by the police. Defendant was not placed in handcuffs or otherwise secured within the police vehicle. Defendant was free to move about his home during the search. During the search of the home, the officers observed a gun safe in the basement of the house. The safe was empty; however, there were dust prints on the floor of the safe indicating that guns had been stored in the safe in the past. The officers found .22 caliber shell casings and an ax inside defendant's personal vehicle. Neither the shell casings nor the ax were related to the shooting. No evidence was seized at defendant's home, nor was any evidence found on defendant's clothing. The results of the atomic absorption test were never admitted into evidence at trial. The test was ineffective anyway because defendant had washed his hands before the test.

The ax used to cut down the tree was found near the scene of the shooting. It was later identified by defendant's son as belonging to defendant. The murder weapon was found several months after defendant's arrest in a wooded area, about twenty feet from the road, on the property of defendant's neighbor. It was wrapped in a camouflage case and a box of shells was found with it. Gun registration records established that defendant purchased the shotgun in 1989.

On July 15, 1993, defendant purchased a one-way airline ticket to Detroit. Police learned of defendant's intentions after questioning defendant's friend. Defendant had been under surveillance since July 13, 1993. Upon belief that defendant was attempting to flee the area, the Wayne County Sheriff's Office was

notified and deputies arrested defendant as a homicide suspect when he landed at Detroit Metropolitan Airport on July 15, 1993.

On July 15, 1993, the police executed a search warrant for defendant's home. Seven guns were found in a deer blind on defendant's property. A shotgun was not recovered; however, an interchangeable barrel was found that fit the murder weapon.

## II. SUFFICIENCY OF THE EVIDENCE

First, defendant claims that the prosecution failed to prove beyond a reasonable doubt that he was, in fact, the person who killed Terrence Barr. An appellate court's review of the sufficiency of the evidence to sustain a conviction turns not on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). The evidence must be viewed in the light most favorable to the prosecution. *Id.* at 514-515.

The prosecution argues that this issue involves the weight of the evidence, but because defendant did not make a motion for a new trial that issue is therefore not properly preserved for appellate review. *People v Johnson*, 168 Mich App 581, 585; 425 NW2d 187 (1988). Because defendant argues that the evidence was insufficient, we will confine our analysis to that standard only.

In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. Premeditation and delib-

eration require sufficient time to allow the defendant to take a second look. *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Circumstantial evidence and reasonable inferences drawn from the evidence may constitute satisfactory proof of the elements of the crime. *People v Greenwood*, 209 Mich App 470, 472; 531 NW2d 771 (1995).

From the above-stated facts, we believe that it is readily conceivable that defendant committed this crime. The prosecution presented evidence of defendant's whereabouts in the early morning hours on July 13 sufficient for a jury to infer and find beyond a reasonable doubt that it was defendant's DNR vehicle that was parked along the side of Lewiston Grade while defendant sat in the wooded area lying in wait for Terrence Barr to pass by on his way to work.

Premeditation and deliberation were established by evidence inferring the plan to kill Barr. Defendant chopped down a tree to create a diversion for Barr that required Barr to get out of his truck while defendant waited for Barr in the woods. Essentially, the plan was an ambush to commit murder.

The physical evidence linking defendant to the shooting included the fact that the gun used to shoot Barr was registered to defendant, and the fact that defendant's ax, found at the scene, was the ax used to fell the tree that blocked the victim's right of way.

Further, there was evidence to establish that defendant tried to cover up his involvement in the shooting. Several firearms that defendant owned were hidden in a deer blind on his property. Also, defendant, abruptly and without a neutral reason, took flight to Detroit with the intent to travel to an unknown destination. In sum, after reviewing all the evidence,

we believe that there was sufficient evidence presented by the prosecution to justify the trier of fact's conclusion that it was defendant who committed this crime.

### III. RIGHT TO COUNSEL AND SEARCH AND SEIZURE

Next, defendant asserts that once he invoked his constitutional right to counsel, the police violated his Fifth and Sixth Amendment rights by asking him to sign the consent to search forms. Defendant also claims that the consent to search was coerced, thus violating his Fourth Amendment right to be free from unreasonable searches and seizures. Defendant argues that the trial court erred in failing to grant his motion to suppress the evidence obtained as a result of the searches.

In general, a trial court's findings at an evidentiary hearing are reviewed for clear error. However, a trial court's ruling on a motion to suppress the evidence is reviewed under the de novo standard for all mixed questions of fact and law, and for all pure questions of law. *People v Goforth*, 222 Mich App 306, 310, n 4; 564 NW2d 526 (1997).

The right to counsel is guaranteed by both the Fifth and Sixth Amendments of the United States Constitution, as well as Const 1963, art 1, §§ 17 and 20. However, these constitutional rights are distinct and not necessarily coextensive. *People v Bladel (After Remand)*, 421 Mich 39, 50-51; 365 NW2d 56 (1984), aff'd sub nom *Michigan v Jackson*, 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986); *People v Buckles*, 155 Mich App 1, 5; 399 NW2d 421 (1986). The Sixth Amendment directly guarantees the right to counsel in all criminal prosecutions, while the Fifth Amend-

ment right to counsel is a corollary to the amendment's stated right against self-incrimination and to due process. *Buckles, supra* at 5, n 6. The right to counsel guaranteed by the Michigan Constitution is generally the same as that guaranteed by the Sixth Amendment; absent a compelling reason to afford greater protection under the Michigan Constitution, the right to counsel provisions will be construed to afford the same protections. *Ann Arbor v McCleary,* 228 Mich App 674; 579 NW2d 460 (1998).

### A. FIFTH AMENDMENT RIGHT TO COUNSEL

Defendant asserts that once he informed the police that he wanted to speak to an attorney, they were precluded from asking him to sign the consent to search forms. Defendant claims such questioning was in direct violation of his Fifth Amendment right to counsel. We now take the opportunity to address the issue whether asking a suspect for consent to search after he has requested counsel is in violation of the Fifth Amendment's prohibition against compelled testimony.[2]

---

[2] We note the rule announced in *People v Bender,* 452 Mich 594; 551 NW2d 71 (1996), whereby a confession obtained by the police while the suspect's retained attorney is waiting to contact his client is a preclusion per se of the suspect's knowing and intelligent waiver of his rights to remain silent and to counsel.

The *Bender* decision is not applicable to this case for two reasons:

(1) In *Bender,* the defendant had made a confession while his retained counsel was waiting to speak with him. In the present case, defendant made no incriminating statements to the police, and he did not have retained counsel waiting to speak with him. Further, it is our decision today that a suspect's freely given consent to search is not the equivalent of making an incriminating statement; and

(2) In *People v Sexton,* 458 Mich 43; 580 NW2d 404 (1998), the Supreme Court held that its decision in *Bender* is subject to prospective application only. Thus, even if the instant case paralleled the facts in *Bender,* that holding applies only to interrogations occurring after July 23, 1996.

The procedural safeguards for the Fifth Amendment adopted in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), require that the police discontinue the questioning of a suspect when a request for counsel is made. The safeguards adopted in *Miranda* apply only where there is a custodial interrogation; further, "interrogation refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *People v Anderson*, 209 Mich App 527, 532-533; 531 NW2d 780 (1995), citing *Rhode Island v Innis*, 446 US 291, 301; 100 S Ct 1682; 64 L Ed 2d 297 (1980). With respect to custody, the critical question is whether the person reasonably believed that he was not free to leave. *People v McElhaney*, 215 Mich App 269, 278; 545 NW2d 18 (1996). In deciding if the defendant was in custody, this Court must look to the totality of the circumstances. *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997).

In looking at all the facts of this case, it is clear that defendant was not in custody at the time he asked for counsel and later signed the consent forms. Defendant voluntarily appeared at the police station for questioning, he was free to leave at any time, and he returned home after the searches were conducted. *Id.* at 383-384.

The next question involves whether the police violated the defendant's right to counsel by asking him to sign the consent forms under the shadow of his request to consult with an attorney and in the absence of an attorney. While Michigan courts have

yet to decide this issue, we take note of several federal appellate courts' analysis of this issue.

The United States Supreme Court has held that the Fifth Amendment protects against compelled incriminating "evidence of a testimonial or communicative nature," and not against compelled production of physical evidence. *Schmerber v California*, 384 US 757, 761; 86 S Ct 1826; 16 L Ed 2d 908 (1966). Is consenting to a search evidence of a testimonial or communicative nature? We believe that it is not. We rely on the federal circuit courts for guidance on this issue.

Defendant's consent, in and of itself, is not evidence that tends to incriminate him. While the search pursuant to that consent may disclose incriminating evidence, such evidence is real and physical, not testimonial. *Cody v Solem*, 755 F2d 1323, 1330 (CA 8, 1984), citing *United States v Garcia*, 496 F2d 670, 675 (CA 5, 1974). In *United States v LaGrone*, 43 F3d 332 (CA 7, 1994), the defendant claimed that after he asked to speak with an attorney, the police should have ceased "interrogating" him about whether he would sign a consent to search form. That court stated, "In [*United States v Glenna*, 878 F2d 967 (CA 7, 1989)], we held that because requesting consent to search is not likely to elicit an incriminating statement, such questioning is not interrogation." (Citations omitted.) *LaGrone*, at 335. Other federal circuits have adopted this principle. See *United States v Rodriguez-Garcia*, 983 F2d 1563 (CA 10, 1993); *United States v Lewis*, 287 US App DC 306; 921 F2d 1294 (1990); *Smith v Wainwright*, 581 F2d 1149 (CA 5, 1978); *United States v Lemon*, 550 F2d 467 (CA 9,

1977); *United States v Faruolo*, 506 F2d 490 (CA 2, 1974).

The Wisconsin Supreme Court has compared the protections of the Fifth Amendment, *Miranda,* and the Fourth Amendment. In *State v Turner*, 136 Wis 2d 333; 401 NW2d 827 (1987), the court explained that *Miranda* addresses the need to protect the integrity and fairness of the trial process. In contrast, the Fourth Amendment is concerned with an individual's right to privacy and to be left alone. The court concluded that the Fifth Amendment did not apply to a request for consent to search after a request for counsel was made and that the only issue was whether the consent was voluntarily provided under the Fourth Amendment's tests. *Id.* at 353. We hold that defendant's Fifth Amendment rights were not violated by the police request that he sign consent to search forms after defendant asked for an attorney.

### B. SIXTH AMENDMENT RIGHT TO COUNSEL

Defendant claims that the police investigation focused on him as a suspect when he was questioned so that his Sixth Amendment right to counsel had attached. We disagree.

First, the facts do not show that the police focused the investigation solely on defendant. Defendant was not a suspect until after he appeared for questioning at the police station. The reason defendant was sought for questioning was because he had a scheduled meeting with Barr on the day of the shooting.

Second, the Sixth Amendment right to counsel did not attach even if the police had focused their investigation on defendant. The right attaches and represents a critical stage in the proceedings only after

adversarial legal proceedings have been initiated against a defendant by way of indictment, information, formal charge, preliminary hearing, or arraignment. *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994), cert den 513 US 1183; 115 S Ct 1175; 130 L Ed 2d 1128 (1995).

Formal adversarial proceedings had not begun when defendant was asked to sign the consent forms. While Michigan case law does not address whether a consent to search form is a critical stage, we again rely on the federal circuit courts for guidance. The Second Circuit Court of Appeals has held that a request for a consent to search is not a critical stage of a criminal proceeding to which the right to counsel applies. *United States v Kon Yu-Leung*, 910 F2d 33, 39 (CA 2, 1990). That court held that the Sixth Amendment right to counsel does not apply to a consent to search, because a search does not generate evidence, but merely reveals evidence already in existence and certain to become available to the government in due course. *Id.* at 40. A request for a consent to search is not a trial-like confrontation; instead, it is more like a request for other types of physical evidence, such as handwriting exemplars and blood samples. *United States v Hidalgo*, 7 F3d 1566, 1570 (CA 11, 1993). We agree. Thus, defendant's Sixth Amendment right to counsel had not yet attached.

When defendant requested counsel, it was predicated on his Fifth Amendment right against self-incrimination only. The police officers' request that defendant provide consent to searches of his person, home, and clothing did not violate defendant's Sixth Amendment right to counsel.

C. FOURTH AMENDMENT SEARCH AND SEIZURE

Defendant next asserts that his Fourth Amendment right to be free from illegal searches and seizures was violated by coercive techniques employed by police officers in obtaining his consent to search his person, clothing, and home. Specifically, the failure of the police to obtain counsel for defendant before his signing of the consent forms.

While warrants are generally required before the police may conduct searches, Fourth Amendment rights are waivable and a defendant may always consent to a search of himself or his premises. *Goforth, supra* at 309. A trial court must review the totality of the circumstances to decide if the consent to search was valid. *Id.* The trial court's decision regarding the validity of the consent to search is reviewed by this Court under a standard of clear error. *Id.* at 310.

The consent exception to the warrant requirement allows a search and seizure when consent is unequivocal, specific, and freely and intelligently given. *People v Kaigler*, 368 Mich 281, 294; 118 NW2d 406 (1962); *People v Malone*, 180 Mich App 347, 355; 447 NW2d 157 (1989); see generally *Schneckloth v Bustamonte*, 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973). The validity of the consent depends on the totality of the circumstances. *Goforth, supra* at 309.

From the evidence admitted in the lower court's record, it is apparent that the trial court did not err in its findings. The situation and circumstances surrounding defendant's questioning by the officers does not suggest that defendant was coerced into agreeing to the searches. Defendant fully cooperated with the police and never indicated any reluctance or that he was pressed into cooperating or consenting to the

searches. The trial court did not err in finding that the defendant voluntarily consented to the searches.

### D. THE "FRUIT OF THE POISONOUS TREE" DOCTRINE

Defendant claims that because his Fourth, Fifth, and Sixth Amendment rights were violated by the police in failing to obtain counsel before his signing of the consent to search forms, the trial court should have suppressed the evidence obtained as a result of those searches. Since we find that defendant's constitutional rights were not violated by the actions of the police, the "fruits of the poisonous tree" doctrine as established in *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), is irrelevant to the facts of this case.

### IV. CIRCUMSTANTIAL EVIDENCE AND THE JURY INSTRUCTIONS

Finally, defendant claims that the jury instructions issued by the trial court were inaccurate in that the instructions failed to require the prosecution to disprove any reasonable theories consistent with defendant's innocence. Whether the trial court properly instructed the jury regarding the state of the law with regard to the prosecution's burden of proof involves a question of law. We review questions of law de novo. *People v Connor*, 209 Mich App 419, 423; 531 NW2d 734 (1995).

Defendant asked the trial court to instruct the jury that not only did the prosecution have the burden of proof beyond a reasonable doubt, but also that the prosecution had the burden of disproving any reasonable theory of innocence presented by the circumstances. Defendant's request was based on the standard jury instructions formerly found at CJI 4:2:01

and 4:2:02.[3] When drafting the second version of the Criminal Jury Instructions, the committee decided not to include any instruction that the prosecution was required to negate every theory of innocence, as noted in CJI2d 4.3. Further, this Court recently reaffirmed that the prosecution is not required to negate every reasonable theory consistent with the defendant's innocence in a circumstantial evidence case, but that it is only required to prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may produce. *People v Daoust*, 228 Mich App 1; 577 NW2d 179 (1998). Accordingly, the trial court did not err in refusing to instruct the jury that the prosecution's burden included negating all reasonable theories of innocence.

Affirmed.

---

[3] CJI 4:2:02(6) provided:

[Circumstantial evidence alone may be used to prove an element of an offense, but the prosecution has the burden of disproving any reasonable theory of innocence which is presented by the circumstances.]