# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
October 13, 2015

v

DEMARKO CARRINGTON SANDERS,

Defendant-Appellant.

No. 322712
Genesee Circuit Court
LC No. 14-034408-FH

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

A jury convicted defendant of third-degree fleeing and eluding, MCL 257.602a(3)(a), and resisting or obstructing arrest, MCL 750.81d(1), based on his failure to pull over for a traffic stop and leading law enforcement officers on a high-speed chase. Defendant raises several challenges on appeal, all of which lack merit. We therefore affirm.

## I. BACKGROUND

Around noon on July 31, 2013, Michigan State Police Troopers Jeffrey Rodgers and Dan Nease were in a fully marked patrol car driving southbound on I-475 in Genesee County. They noticed a sedan in the center lane with a paper license plate in the back window. A quick LEIN search revealed that the temporary plate was invalid. The troopers activated their emergency lights in an attempt to execute a traffic stop. Defendant, the driver of the sedan, signaled and merged into the right lane but did not stop, even after the troopers turned on their siren.

Defendant continued to drive for approximately three miles and passed an exit before leaving the expressway via the Court Street exit ramp. Defendant turned onto Chavez Street and then merged into the right-hand turn lane to turn onto Second, which would have led him into downtown Flint. Believing that defendant had no intention of stopping, Trooper Rodgers executed a "PIT" maneuver, designed to force a suspect vehicle to spin and then shut down. The maneuver failed and defendant accelerated rapidly, leading the troopers on an approximate 15-minute chase up and down Flint streets and through residential neighborhoods at speeds up to 90 miles an hour. During the chase, defendant twice slammed on his brakes, causing the patrol car to strike defendant's vehicle. Trooper Rodgers attempted a second unsuccessful PIT maneuver on Mary Street and crashed through a fence. Genesee County Sheriff's Deputy Scott Minaudo had joined the chase and continued the pursuit. Defendant led the deputy through a field near a church at the corner of E. Austin and Fulton. Defendant then jumped out of his still-rolling

-1-

vehicle and fled on foot into the backyard of a nearby residence. Deputy Minaudo followed on foot, ordering defendant to stop and drop to the ground. Defendant finally stopped and cooperated in his apprehension and arrest.

The deputy placed defendant in the backseat of his patrol vehicle. Inside, Michigan State Police Trooper Nathan Ellis informed defendant of his *Miranda*[1] rights. The trooper testified that defendant waived his right to counsel and spoke with him. Defendant told the trooper that he did not immediately stop because he wanted to first ready his camera, presumably to record his interaction with the police.

Defendant took the stand and claimed that he fully intended to stop but that he feared for his life after the troopers "aggressively smashed" into his car. Defendant contended that Trooper Rodgers's PIT maneuver scared and confused him and caused him to flee out of fear. Defendant asserted that he was trying to reach his home where he would have felt safe surrendering.

In his closing argument, defendant's attorney emphasized that defendant was going to stop at Second Street, just before Trooper Rodgers attempted the first PIT maneuver, but the troopers did not give him a chance. He stressed that defendant was driving lawfully until hit by the police car, and that the chase did not begin until that first failed PIT maneuver. Counsel further asserted that the chase never would have happened had troopers given defendant a chance to pull over. The jury rejected this defense and convicted defendant as charged.

## II. RIGHT TO RESIST UNLAWFUL ARREST

Defendant contends through appellate counsel that his trial attorney was ineffective in failing to request an instruction on the right to resist an unlawful arrest. Defendant failed to preserve his challenge by requesting a new trial or a *Ginther*[2] hearing, and our review is limited to mistakes apparent on the existing record. *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect,

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014).]

Defendant contends that the evidence supported that Trooper Rodgers acted unlawfully when he collided with defendant's sedan during the initial "PIT" maneuver, excusing defendant's decision to flee rather than submit to the unlawful show of force. In fact, defense counsel argued this very point in closing argument. "A defendant's request for a jury instruction on a theory or defense must be granted if supported by the evidence." *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003). Therefore, defendant contends, had defense counsel taken the next step and requested the instruction, the court would have given it.

We do not agree that defendant would have been entitled to a jury instruction on the subject defense. Michigan's common-law right to resist an unlawful arrest was described in *People v Moreno*, 491 Mich 38, 47; 814 NW2d 624 (2012): "one may use such reasonable force as is necessary to prevent an illegal attachment and to resist an illegal arrest and . . . the basis for such preventive or resistive action is the illegality of an officer's action, to which [a] defendant immediately reacts." (Quotation marks and citation omitted, second alteration in original). In order to raise the defense, there must be evidence that the law enforcement officers acted illegally. Such evidence does not exist here.

Defendant does not appreciate that Troopers Rodgers and Nease legally attempted to effectuate a traffic stop on I-475 based on defendant's invalid license plate. MCL 257.224(9) prohibits a driver from operating a vehicle on the road while "displaying a registration plate other than the registration plate issued for the vehicle by the secretary of state." Once the troopers activated their lights, defendant was required to pull over. See MCL 257.602a(1). Instead, defendant waited at least three miles, exited the expressway, and attempted to turn onto yet another roadway without stopping. Defendant even admitted to Trooper Ellis that he purposefully chose not to stop in a timely fashion. Defendant therefore could not have reasonably believed that the troopers were acting illegally when they attempted to force his stop.[3]

The evidence also does not support that the troopers used unlawful and excessive force in employing the PIT maneuver against defendant's vehicle. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v Connor*, 490 US 386, 394; 109 S Ct 1865; 104 L Ed 2d 443 (1989)

---

[3] In this regard we find instructive *Hardesty v City of Ecorse*, 623 F Supp 2d 855, 860-861 (ED Mich, 2009). In that case, the federal district court found that the defendant police officer had probable cause to arrest the plaintiff for fleeing and eluding where the plaintiff turned left and drove for a quarter mile before acquiescing in a traffic stop.

(alterations in original). When considering the reasonableness of the force used to effectuate a stop, we must balance the interests of the individual and the government. In doing so, we must consider the facts and circumstances in the particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. We must review the officer's actions objectively and from the perspective of a reasonable officer, and not judge his conduct with the benefit of hindsight. *Id.* at 396-397.

When Trooper Rodgers decided to employ the PIT maneuver, he and his partner had already tailed defendant for more than three miles. Given defendant's continuous failure to stop despite repeated opportunities to do so, the troopers' belief that defendant intended to turn onto Second Street and continue along his course was objectively reasonable. Second Street led into a busy section of downtown Flint and the troopers would quickly lose the opportunity to safely use any offensive maneuver to stop defendant's vehicle. Accordingly, the troopers acted lawfully when they employed the PIT maneuver in an attempt to stop defendant's car.

As the evidence establishes that the troopers lawfully acted to attempt to stop defendant's vehicle, defendant had no legal right to resist arrest. He was therefore not entitled to a jury instruction on this defense and any such request by defense counsel would have been rejected. Counsel cannot be deemed ineffective for failing to pursue this meritless argument. See *People v Wilson*, 252 Mich App 390, 393-394; 652 NW2d 488 (2002) ("Trial counsel is not ineffective for failing to advocate a meritless position.").

### III. STANDARD 4 BRIEF

Defendant raises several additional challenges in an in pro per brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4. Much of this brief is confusing and rambling. However, we will address defendant's claims to the extent possible.

### A. QUASH THE INFORMATION

Defendant first contends that the prosecutor failed to establish probable cause to bind defendant over for trial and that the circuit court therefore should have granted his motion to quash the information. "Generally, a circuit court's decision to grant a motion to quash a felony information is reviewed de novo to determine if the district court abused its discretion in ordering a bind over." *People v Grayer*, 235 Mich App 737, 739; 599 NW2d 527 (1999). Where the prosecutor establishes at the preliminary examination that there is "probable cause to believe that a crime was committed and . . . that the defendant committed it," the district court must bind the defendant over, *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003), and quashing the information would be inappropriate.

The prosecutor met her evidentiary burden at the preliminary examination. This Court described the elements of third-degree fleeing and eluding in *Grayer*, 235 Mich App at 741:[4]

> (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision, or the defendant must have been previously convicted of certain prior violations of the law . . . .

Trooper Rodgers testified at the preliminary examination that he and his partner were in uniform in a fully marked patrol vehicle and used their emergency lights and then siren to notify defendant to stop his motor vehicle, satisfying the first three elements. From the length of time and distance the troopers followed defendant, the district court could infer that defendant knew or should have known that he had been ordered to stop, supplying probable cause for the fourth element. In relation to element five, the prosecutor presented evidence that defendant refused to obey the order to stop. To satisfy this element, the prosecutor must establish "some intent on the part of the defendant to flee or avoid capture." *Id*. at 742. "Intent is a question of fact to be inferred from the circumstances by the trier of fact." *People v Kieronski*, 214 Mich App 222, 232; 542 NW2d 339 (1995). Trooper Rodgers testified that defendant continued to drive past one exit before veering off the expressway and made at least two turns thereafter. Defendant's failure to stop despite multiple opportunities to do so provided probable cause. And the prosecutor presented evidence to meet the sixth element as defendant led the chase through a residential neighborhood and caused the state police patrol vehicle to crash through a fence.

The prosecutor also presented sufficient evidence to bind defendant over on the charge of resisting arrest in violation of MCL 750.81d(1). The elements of this offense are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotations marks and citation omitted). In addition, the prosecutor must show that the police officer's actions were lawful. *Id*. at 494. As discussed above, the law enforcement officers lawfully acted to apprehend defendant in this case. That the various troopers and the sheriff's deputy were in fully marked patrol vehicles supported that defendant knew his pursuers were law

---

[4] When *Grayer* was decided, fleeing and eluding was proscribed by MCL 750.479a. Substantively identical language now appears in MCL 257.602a.

enforcement officers. And defendant resisted arrest, and even a simple traffic stop, by fleeing from the troopers. In the process, defendant twice slammed on his brakes and caused the state troopers to rear end his vehicle, and caused a situation where the troopers crashed their vehicle through a fence. Because competent evidence was offered at the preliminary examination to support that defendant violated both statutes at issue, the district court did not abuse its discretion in binding defendant over, and the circuit court properly denied defendant's motion to quash.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant also challenges the sufficiency of the evidence supporting his convictions. In the face of such a challenge, "we review the evidence de novo, in the light most favorable to the prosecution," to determine "whether any rational fact-finder could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). We will not interfere with the trier of fact's role of determining the weight of the evidence or assessing the credibility of witnesses. *Id.* at 419. "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

The evidence presented at trial was even stronger than that presented at the preliminary examination. Trooper Ellis testified that defendant emphatically admitted that he knew Troopers Rodgers and Nease were trying to pull him over. Defendant told Trooper Ellis that he did not stop because he "was trying to get [his] camera ready." Defendant also informed the trooper that he did not have a valid driver's license or no-fault insurance, and knew that the temporary plate did not belong to the vehicle he was driving. Despite the evidence that defendant purposefully chose not to stop in a timely fashion and had several motives to avoid apprehension, defendant claimed at trial that he had intended to pull over once he turned onto Second Street. Again, "[i]ntent is a question of fact to be inferred from the circumstances by the trier of fact," *Kieronski*, 214 Mich App at 232, and the jury did not find defendant's testimony credible. We may not interfere with the jury's assessment and defendant's challenge to the sufficiency of the evidence must fail.

## C. ASSISTANCE OF COUNSEL

Defendant contends that defense counsel was ineffective because he failed to move to admit evidence that defendant claims would have supported his defense. "We will not substitute our judgment for that of counsel on matters of trial strategy," *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), such as decisions regarding what evidence to present at trial, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). In any event, defendant has abandoned his claim by completely failing to identify the "documents and photograph" he believes should have been presented or to describe their evidentiary importance. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

Defendant claims that counsel should have objected to the prosecutor's reissuance of the information against him. Following defendant's arrest, the prosecutor dismissed and then refiled the charges against him. Defendant argues that the information was insufficient because it

contained "no statement of any offense" and charged "no offense known to the Law." Specifically, defendant complains that the information fails to describe the actions of the officers that precipitated defendant's flight. A review of the information reveals no such insufficiency. The document lists the charged offenses and there simply is no legal support for requiring a description of the officers' conduct in this document. The facts that defendant believes should have been included are important to his defense, not the initial decision to charge him with a crime. Accordingly, defendant's claim lacks merit and counsel cannot be deemed ineffective in failing to raise it. *Wilson*, 252 Mich App at 393-394.

## D. DURESS DEFENSE

Defendant avers that he was improperly denied the opportunity to present a duress defense. However, such a defense was not available in this case. To establish a duress defense, there must be evidence that the officers engaged in threatening conduct that would cause a reasonable person to fear death or serious bodily harm, that the defendant actually maintained such a fear, that the defendant was acting under the influence of that fear when he fled from the police, and that the defendant fled for the purpose of avoiding the perceived threatened harm. See *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). The threatening conduct underlying the claim of duress "must arise without the negligence of fault of the person claiming the defense." *Id*. at 371-372.

Defendant's failure to respond to the patrol car's emergency lights and siren by pulling over gave rise to Trooper Rodgers's execution of the PIT maneuver that serves as the "threatening conduct" underlying defendant's proffered duress defense. Had defendant pulled over on the shoulder of the I-475, the Court Street exit, or Chavez Street, he could have prevented Trooper Rodgers's use of the PIT maneuver. Defendant's own conduct caused the need for the troopers to resort to this drastic measure. Accordingly, defendant could not have supported this defense.

## E. RIGHT TO COUNSEL

Defendant alleges that the law enforcement officers involved in this case violated his right to counsel guaranteed by US Const, Am V and US Const, Am VI,[5] because defendant did not have an attorney present when interviewed by Trooper Ellis. Our review is limited to plain error affecting substantial rights as defendant failed to raise this challenge until his appeal. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

"[T]he Fifth Amendment right to counsel is a corollary to the amendment's stated right against self-incrimination and to due process." *People v Marsack*, 231 Mich App 364, 372-373; 586 NW2d 234 (1998). The procedural safeguard to protect this right was created by *Miranda*. *Id.* at 374. In this case, Trooper Ellis testified that he read defendant his *Miranda* rights and that

---

[5] Defendant's Sixth Amendment rights were not implicated in this case. The Sixth Amendment right to counsel does not attach until the criminal prosecution is initiated. See *Marsack*, 231 Mich App at 372.

defendant waived his right to counsel and spoke to the trooper voluntarily. Defendant did not rebut Trooper Ellis's version of events. Accordingly, defendant's claim that he was denied his right to counsel is without merit.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy