*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
May 30, 2024

v

TYBERIUS DEWAYNE FRANKLIN,

        Defendant-Appellant.

No. 367668
Jackson Circuit Court
LC No. 2022-003674-FH

Before: MARKEY, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted[1] the circuit court's order partially denying his motion to suppress. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises from a November 29, 2022 traffic stop of defendant's vehicle. Defendant was driving an unregistered, unlicensed white SUV when he pulled in front of Michigan State Trooper Matthew Markey. Trooper Markey executed a traffic stop, and, after speaking with defendant, learned defendant was driving without a driver's license and was on probation for various violent felonies. Among the conditions of his probation, defendant's probation officer could search defendant without a warrant. Throughout the stop, Trooper Markey repeatedly asked defendant for consent to search his backpack, but was denied each time. About 27 minutes into the stop, Trooper Markey advised defendant he would call defendant's probation officer to receive consent to search the backpack. Defendant eventually consented to a search of his backpack, where Trooper Markey discovered a handgun.

---

[1] *People v Franklin*, unpublished order of the Court of Appeals, entered December 20, 2023 (Docket No. 367668).

Defendant was arrested and charged with (1) felon in possession of a firearm (felon-in-possession), MCL 750.224f; (2) possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b(a); (3) possession of ammunition by a person convicted of a felony (felon-in-possession of ammunition), MCL 750.224f(6); and (4) carrying a concealed weapon (CCW), MCL 750.227. He later moved to suppress both the firearm and his pre-*Miranda*[2] statements. The circuit court granted the motion to suppress with respect to the pre-*Miranda* statements, but denied it as to the firearm. This appeal followed.

## II. SEARCH AND SEIZURE

Defendant argues the search and seizure of his backpack was unreasonable, and, therefore, the circuit court erred in partially denying his motion to suppress. We disagree.

## A. STANDARD OF REVIEW

"We review de novo the trial court's ultimate decision to suppress evidence on the basis of an alleged constitutional violation." *People v Dagwan*, 269 Mich App 338, 341; 711 NW2d 386 (2005). The circuit court's factual determinations are reviewed for clear error, and we defer to its "special opportunity to determine the credibility of witnesses appearing before it." *Id*. at 342. "[A] finding of fact is clearly erroneous if, after reviewing the entire record, we are left with a definite and firm conviction that a mistake has been made." *Id*. "When the record contains a video recording of the events in question, however, this Court need not rely on the trial court's conclusions as to what the video contains." *People v Campbell*, 329 Mich App 185, 193; 942 NW2d 51 (2019) (quotation marks and citation omitted).

## B. FOUNDATIONAL LAW

Criminal defendants have a federal and state constitutional right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The "touchstone" of this guarantee is reasonableness, and unreasonable searches and seizures are prohibited. *Florida v Jimeno*, 500 US 248, 250; 111 S Ct 1801; 114 L Ed 2d 297 (1991); *People v Shields*, 200 Mich App 554, 557; 504 NW2d 711 (1993). Unless an exception exists, "searches or seizures conducted without a warrant are unreasonable per se, and when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial." *People v Woodard*, 321 Mich App 377, 383; 909 NW2d 299 (2017) (quotation marks and citation omitted).

Defendant offers a three-part argument in support of his contention that the circuit court erred in partially denying his motion to suppress. First, he argues the traffic stop was unduly prolonged, and therefore the seizure was unreasonable; second, he claims the search of the backpack was unreasonable because it was not subject to any of the exceptions to the warrant requirement; and third, he contends that, as result of the unconstitutionality of the search and seizure, the exclusionary rule applies. We discuss each argument below.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)

## C. TRAFFIC STOP

A traffic stop is considered a seizure under the Fourth Amendment, and is "justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016) (quotation marks and citation omitted). Whether the length of a traffic stop was reasonable is a totality-of-the-circumstances analysis. *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). "A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period." *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005). An officer's "[a]uthority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v United States*, 575 US 348, 349; 135 S Ct 1609; 191 L Ed 2d 492 (2015). "[A]lthough police officers 'may conduct certain unrelated checks during an otherwise lawful traffic stop,' they 'may not do so in a way that prolongs the stop[.]' " *People v Kavanaugh*, 320 Mich App 293, 300-301; 907 NW2d 845 (2017), quoting *Rodriguez*, 575 US at 355.

> Once the constitutionally sound basis for the traffic stop has been addressed, any further extension of the detention in order to conduct [o]n-scene investigation into other crimes or for any other reason is a Fourth Amendment violation unless new facts come to light during the traffic stop that give rise to reasonable suspicion of criminal activity. [*Kavanaugh*, 320 Mich App at 301 (footnote, quotation marks, and citation omitted, alteration in original).]

Defendant claims that the traffic stop was unnecessarily prolonged, and that the investigation into the original purpose for the stop—an unlicensed vehicle—should have been resolved quickly. Thus, defendant contends, the State Police lacked authority to continue the stop.

The stop lasted approximately 27 minutes from when defendant was pulled over until the firearm was discovered in his backpack. Defendant concedes that Trooper Markey was justified in making the initial traffic stop. He does not, however, explain at what moment during the 27 minutes before the firearm was discovered the stop became unreasonable. It is defendant's burden on appeal to explain his argument, and failure to do so constitutes abandonment. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

In the absence of any express argument by defendant, we presume defendant agrees the first 11 minutes of the stop constituted a reasonable seizure for the purpose of the Fourth Amendment. Trooper Markey initiated the stop because defendant's SUV lacked a license plate, which is a civil infraction. MCL 257.225(1) and (7). He approached defendant, who immediately admitted he did not have a valid driver's license, which is a criminal infraction, MCL 257.311. Trooper Markey resolved these issues approximately 11 minutes into the stop when, after running LEIN checks of the SUV and defendant, he learned the vehicle was not registered with the Secretary of State and lacked insurance. At this point, Trooper Markey could have issued citations for the vehicle registration issues and/or arrested defendant for driving without a license.

Trooper Markey did not, however, take either of these actions. Thus, the relevant question in this case is whether the remaining 16 minutes Trooper Markey detained defendant up to the discovery of the firearm constituted an unreasonable seizure. Trooper Markey explained his reasons for extending the stop during his testimony at the preliminary examination. He said "[defendant's] behavior when asked about the bag was very nervous. He appeared to be very uncomfortable with the idea of me looking [in] the bag[.]"

The prosecutor further questioned Trooper Markey about his reasons for prolonging the stop:

> *Q*. What happened to change your mind, what evidence happened that made you go wait a second maybe I should start looking deeper into this bag?
>
> *A*. Yes, sir. So at this point, I did not know about the unregistered vehicle or the lack of insurance on the vehicle. I also had not yet found that he was on probation out of the 4th Circuit Court for assault less than murder or out of Pontiac for carrying a concealed weapon, and I had not yet asked him any questions about the bag at that point. So, once I put in the, moved him to the front of my vehicle[,] asked him about the bag, observed his response to my questions, ran him in my vehicle[,] observed that he was on probation. Had two warrants out of Inkster PD[,] misdemeanor warrants as well as observed that the vehicle was under unregistered and uninsured.
>
> *Q*. So a combination of all these factors together[,] his history[,] the fact he is on probation, CCW, the assault with intent to commit bodily harm, the—the way he's been acting, the way he was answering questions. All of those . . . combined is . . . what caused you to have suspicion regarding to what was in the bag that led you to . . . have further conversations.
>
> *A*. Yes, sir[.] [B]ased on my training and experience dealing with people[,] his responses to my questions as well as his behavior when I was near the bag verse [sic] near him or the vehicle.
>
> *Q*. Explain that what do you mean his behavior when you were in the bag. I don't think we talked about that.
>
> *A*. Yes, sir[.] [S]o when I asked to search his person and his vehicle he was quick [sic] said yes, no problem[,] I searched those things. When I asked him about the bag, he appeared very concerned, said no I can't let you, made reference multiple times that [if] I searched the bag he'd be going to prison and just said I can't let you search the bag. When I asked him about drugs specifically, he stated no quickly without hesitation. When I asked him about a weapon, he wouldn't answer the question and said I just can't let you search the bag.

Along with this testimony, the bodycam footage also showed that Trooper Markey received several officer safety warnings when he ran defendant's name through LEIN.

Defendant argues that Trooper Markey detained him because he refused to consent to the search of his backpack. Indeed, "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v Bostick*, 501 US 429, 437; 111 S Ct 2382; 115 L Ed 2d 389 (1991). Defendant refused Trooper Markey's repeated requests to search the backpack—a fact the prosecutor agreed was "badger[ing]." If *only* Trooper Markey's repeated requests to search the backpack are considered, this scenario could be viewed as an impermissible attempt to exhaust defendant's will, and, therefore, Trooper Markey was not justified in continuing the traffic stop. But, this is a totality-of-the-circumstances test, *Dillon*, 296 Mich App at 508, and Trooper Markey did not testify that defendant's refusal was the reason he continued the stop. Rather, Trooper Markey said he decided to continue the stop, in part, because of the stark contrast between defendant's readiness to consent to the search of his person and the SUV, with his reticence to consent to the search of his backpack. Thus, Trooper Markey's suspicion did not arise because defendant refused to consent, but because of defendant's inconsistent behavior relative to the consent.

Trooper Markey also cited defendant's recent criminal history—which included weapons offenses—as a basis to continue the stop. We note that, in addition to other factors, a defendant's criminal history contributes "powerfully to the reasonable suspicion calculus." *United States v Simpson*, 609 F3d 1140, 1148 (CA 10, 2010). Here, defendant's criminal history is highly relevant to the question of reasonable suspicion. Defendant was still on probation for assault less than murder and CCW. Given the recent nature of these offenses to the traffic stop, Trooper Markey was justified in factoring them into his analysis.

Further establishing the reasonableness of the detention are the officer safety warnings Trooper Markey received during his LEIN check. These included: "possibly armed," "caution," "dangerous," and "possible warrant." In the context of a traffic stop, officers face "legitimate dangers." *Campbell*, 329 Mich App at 199. As such, "a police officer is free to question a lawfully detained person about the presence of weapons in his or her vehicle, because such an inquiry relates to the officer's ability to conduct the traffic stop in a safe manner." *Id*. The officer safety warnings, coupled with Trooper Markey's legitimate safety concern, plainly justified prolonging the search.

We also note Trooper Markey testified defendant appeared "nervous" when asked about the backpack. Admittedly, "nervousness alone is insufficient to create a reasonable suspicion of criminal activity." *People v Bloxson*, 205 Mich App 236, 247; 517 NW2d 563 (1994). But, as evidenced by his preliminary examination testimony, Trooper Markey's suspicions went beyond defendant's nervousness. He testified that defendant was only nervous about the search of the backpack, but was unconcerned about the search of the SUV or his person. Thus, while nervousness was a factor in prolonging the detention, it was not the sole, or even primary, reason Trooper Markey decided continued seizure was necessary.

In sum, the first 11 minutes of defendant's detention cannot reasonably be challenged because these relate to the traffic stop's initial purpose. The remaining 16 minutes were also reasonable because, by the time Trooper Markey had fully investigated the initial reasons for the stop, other factors arose which gave him reasonable suspicion of criminal activity. As such, we uphold the seizure of defendant for the entire 27-minute period up to when the firearm was discovered and defendant was placed under arrest.

D. SEARCH

Again, unless an exception exists, evidence discovered in the context of an unconstitutional search must be excluded from trial. *Woodard*, 321 Mich App at 383. On appeal, defendant argues that the search of his backpack was not subject to any exception and was therefore unreasonable.

1. CONSENT

The circuit court's reason for denying defendant's motion to suppress the firearm was because defendant consented to the search of his backpack. Consent is one of the exceptions to the warrant requirement. *Schneckloth v Bustamonte*, 412 US 218, 219; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). To justify a warrantless search on the basis of consent, the prosecution must show "the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth*, 412 US at 248. "On a motion to suppress, it is a question of fact for the trial court to determine on the basis of an assessment of the totality of the circumstances whether a person has freely and voluntarily consented to a search." *Dagwan*, 269 Mich App at 342. While not dispositive, "knowledge of the right to refuse [consent] is but one factor to consider in determining whether consent was voluntary under the totality of the circumstances." *People v Borchard-Ruhland*, 460 Mich 278, 294; 597 NW2d 1 (1999). "The essential question is whether, under 'the most careful scrutiny,' the defendant's free will 'has been overborne and [the defendant's] capacity for self-determination critically impaired,' by official coercion." *People v Stricklin*, 327 Mich App 592, 601; 935 NW2d 59 (2019) (alteration in original), quoting *Schneckloth*, 412 US at 225, 229. Defendant concedes that he eventually consented to the search of his backpack. His primary argument as to this issue is that his consent was coerced, and, therefore, involuntary.

Defendant argues that he was "coerced" because he was faced with the impossible scenario of consenting to the search or waiting for his probation officer to consent to the search. He characterizes Trooper Markey's statement that he would call defendant's probation officer as "threaten[ing]." Importantly, defendant does not contend that the terms of his probation did not allow his probation officer to search, or that his probation officer could not deputize Trooper Markey to search, his backpack. Indeed, defendant's probation officer testified that law enforcement requested his permission to search his probation clients in other cases. Defendant's argument is more properly characterized as a decision between two lawful choices—consent to the search or wait for the probation officer to consent to the search.

In *Stricklin*, 327 Mich App at 601, this Court considered a similar situation in which the defendant was faced with two lawful choices. Police detained the defendant on suspicion of drunk driving. *Id*. at 594. The officer told the defendant he could either consent to a blood draw, or, if he did not consent, "he would temporarily lose his license and be subject to the mandatory imposition of six points against his driving record." *Id*. The defendant consented to the blood draw, but that evidence was later suppressed by the district court because, in the district court's view, defendant's consent was involuntary. *Id*. On appeal, this Court considered whether the choice between the blood draw or the loss of driving privileges rendered the defendant's consent involuntary. *Id*. at 601-602. In concluding the defendant's consent was voluntarily given, we reasoned:

A defendant may always consent to a warrantless search. Defendant admitted during the evidentiary hearing that he fully understood his choices under the implied-consent law and made an informed, reasoned decision. Having to make a choice between two undesirable options does not render defendant's express consent to the blood draw coerced and involuntary. [*Id.* at 603.]

Defendant believes Trooper Markey's actions were coercive because he caused defendant to choose one of these options. From the bodycam footage, defendant plainly understood the implications of this choice. He made statements throughout the footage demonstrating he knew he could deny consent to the search. At the same time, he also understood that his probation officer could, and would, permit the search, asking repeatedly what Trooper Markey would do if he could not get a hold of defendant's probation officer. Defendant knew and appreciated the relevant options. Just because both choices were unfavorable to defendant does not mean his ultimate choice was coerced.

We also disagree with defendant's contention that Trooper Markey's failure to first advise him of his *Miranda* warnings weighs against the voluntariness of his consent. The *Miranda* warnings were fashioned, in part, to inform arrestees of their Fifth Amendment right to remain silent. See *People v Hill*, 429 Mich 382, 394-395; 415 NW2d 193 (1987). This Court has held that Fifth Amendment protections do not apply to a request to search. *People v Marsack*, 231 Mich App 364, 375; 586 NW2d 234 (1998). Therefore, the failure to advise a detainee of their *Miranda* warnings does not automatically invalidate their consent to search. See *People v Reed*, 393 Mich 342, 366; 224 NW2d 867 (1975). Beyond that, *Miranda* warnings only apply to custodial interrogation. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). A request to search is not interrogation because it "is not likely to elicit an incriminating statement[.]" *Marsack*, 231 Mich App at 375 (quotation marks and citation omitted).

## 2. OTHER EXCEPTIONS

Defendant also argues the search of his backpack was not subject to the inevitable discovery, *People v Stevens*, 460 Mich 626, 637; 597 NW2d 53 (1999), or the search incident to arrest, *People v Houstina*, 216 Mich App 70, 75; 549 NW2d 11 (1996), exceptions. The trial court did not cite these exceptions as a basis to partially deny defendant's motion to suppress. Therefore, we need not consider them.

## 3. EXCLUSIONARY RULE

Finally, defendant argues that the circuit court erred in failing to apply the exclusionary rule in this case. The exclusionary rule excludes "[t]he introduction into evidence of materials seized and observations made during an unlawful search[.]" *Stevens*, 460 Mich at 633. It also bars "the introduction into evidence of materials and testimony that are the products or indirect results of an illegal search, the so-called 'fruit of the poisonous tree' doctrine." *Id.* at 633-634, citing *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). But, we need not

consider this argument, because, as discussed above, the circuit court did not err in upholding the search of the backpack.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Riordan
/s/ Thomas C. Cameron