*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VINSON TOOMER,

        Defendant-Appellant.

UNPUBLISHED
March 24, 2020

No. 345145
Wayne Circuit Court
LC No. 18-002216-01-FH

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of first-degree home invasion, MCL 750.110a(2) and sentence of 10 to 20 years' imprisonment for his conviction. We affirm.

## I. FACTUAL HISTORY

This case arises out of a home invasion. After hearing someone knock on the victim's front door, the victim went downstairs, looked through the peephole for approximately 10 seconds, and observed a slender, 5'11," light-complexioned African-American male with goatee-styled facial hair. The man wore a light gray jacket, pants, and a green or gray skull cap. The victim did not answer his door because he did not know the man. Although the victim observed the man walk to his back door, he assumed the man left his home. After the victim went upstairs, he heard a loud bang at his back door. The victim hid under a bed in his guest bedroom, telephoned 911, and texted family for help.

When the victim no longer heard the men, he looked out of a window and noticed a silver Chevrolet back into his driveway. A dark-complexioned African-American man walked up to the silver vehicle. The police arrived immediately thereafter. Detroit Police Officer Mia Nikolich tried to stop the men from driving away. Officer Kevin Butters chased a man he described as having a dark complexion from the victim's home, but was unable to apprehend the suspect.

Detroit Police Sergeants Joseph Machon and Shaun Dunning were led by citizens to an area where a man was seen running through several backyards, and followed footprints in the snow

to a garage behind a vacant home. Sergeants Dunning and Machon found defendant hiding in the rafters of the garage, wearing running shorts and a t-shirt, and arrested defendant. At trial, Sergeant Dunning testified that he believed defendant was the man who ran from the victim's home because he had bruised knees and cuts all over his arms, which indicated to Sergeant Dunning that defendant ran through some type of brush or backyard foliage.

Detroit Police Officer Tyran Hogan arranged for an attorney to assist him construct a six-person black and white photographic lineup. Defendant's mugshot from a previous arrest was depicted in the number two position of the array. The victim chose another photograph in the array. The victim identified defendant in court at defendant's preliminary examination and at trial as the perpetrator.

## II. SUGGESTIVE IDENTIFICATION

Defendant argues that he should be granted a new trial because two unduly suggestive identification procedures occurred. Defendant argues that the police officer impermissibly suggested to the victim that defendant's photograph was included in the photographic array by telling the victim to choose a person in the array. Defendant also argues that the victim's in-court identification of defendant was impermissibly suggestive since the victim would naturally identify defendant. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim for appeal that the photographic identification procedure was improperly suggestive, and consequently, the victim's in-court identification of defendant was also improperly suggestive, a defendant must object at trial to the admission of the photographic identification procedure and to the in-court identification of defendant, or request a *Wade*[1] hearing. *People v McCray*, 245 Mich App 631, 638-639; 630 NW2d 633 (2001). During trial, defendant failed to object or request a *Wade* hearing. Thus, defendant's issue is unpreserved.

A trial court's "decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. However, because defendant's identification issue is unpreserved, this Court's review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.") (citations omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (footnote omitted). "Finally, once a defendant satisfies these three requirements, an appellate court must exercise its

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted).

## B. ANALYSIS

"Due process concerns arise when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *People v Thomas*, 501 Mich 913; 902 NW2d 885 (2017). "A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014) (citation omitted). "[A]n improper suggestion often arises when 'the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person.' Moreover, when 'the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person.' " *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (citation omitted); *Woolfolk*, 304 Mich App at 457 ("Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures.") (citations omitted).

"Generally, the photo spread is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *Kurylczyk*, 443 Mich at 304 (citation omitted). "[W]hether [a photographic identification procedure] violates due process depends on the totality of the circumstances." *Woolfolk*, 304 Mich App at 457 (citations omitted). "The relevant inquiry, therefore, is not whether the lineup photograph was suggestive, but whether it was unduly suggestive in light of all of the circumstances surrounding the identification." *Kurylczyk*, 443 Mich at 306. Even if a court determines that the pretrial procedure was unduly suggestive, "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Id*. at 303.

In challenging the photographic identification procedure, defendant relies on the victim's testimony taken out of context. When read in context, the victim did not imply that the officer told him that defendant's photograph was included in the array, as defendant suggests. Officer Hogan did not conduct a live lineup because there were not enough people in custody that matched defendant's description. As a result, Officer Hogan had an attorney assist him construct a six-person black and white photographic lineup. Officer Hogan selected black and white photographs to avoid suggestiveness of complexion tone. Defendant's mugshot from a previous arrest was included in the photographic array. The matter of the victim having to choose a photograph pertained only to the victim wavering in choosing between two photographs, and the requirement that only one photograph could be selected. The victim clarified that it took him approximately 10 minutes to choose a photograph from the array, and that he chose the photograph because of the man's facial structure. The victim said, "I only had to write on one person. They didn't give me the option to write on any other." Defendant fails to establish that the victim's testimony inferred that the officer told the victim that defendant had been arrested, defendant's photograph was included in the photographic array, or mandated the victim to select a person from the

photographic array. Also, defendant fails to provide evidence showing that the officer, in any manner, singled defendant out of the six-person photographic array. Therefore, defendant fails to establish that the photographic identification procedure improperly suggested defendant as the perpetrator, in violation of his due-process rights. *Gray*, 457 Mich at 111.

It is also difficult to understand how the photographic identification procedure was suggestive when the victim failed to identify defendant. The victim's misidentification did not serve to convict defendant. The victim's failure to choose defendant from the photographic array went to the weight of the victim's in-court identification of defendant, not its admissibility. *Id*. at 124 ("any evidence of the victim's lack of certainty would be relevant to the weight that the evidence should be given, but not to its admissibility.").

In support of defendant's challenge to the victim's in-court identification of defendant, defendant cites to *Gray*, 457 Mich at 111, to show that viewing defendant at defense counsel table, like the exhibition of a single photograph, is one of the most suggestive identification procedures that can be used. On cross-examination, defense counsel asked the victim whether he identified defendant as the perpetrator at defendant's preliminary examination, merely because defendant was seated at defense counsel's table. The victim answered in the negative, and stating:

> Not necessarily. So I would have to disagree with the fact that I figured he was the man just because he was the one that was there. If he was someone different, if he was somebody who had a different description than I had given, I wouldn't have assumed that he was [sic] man.

Thus, defendant fails to show how his citation to *Gray* supports his argument, since the victim explicitly denied that he identified defendant because defendant was seated at defense counsel's table.

Defendant also contends that the victim's in-court identification of defendant was unduly suggestive and subject to misidentification. Defendant argues that defense counsel failed to place the burden on the prosecution to establish by clear and convincing evidence an independent basis for the victim's in-court identification. Defendant's assertions lack merit.

"The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). Because the photographic identification procedure was not improper or unduly suggestive, defendant fails to establish any basis on which the victim's pretrial identification testimony could have been suppressed. Therefore, there was no need for the prosecution to find an independent basis for in-court identification.

Defendant also asserts that the victim was the only witness to positively identify defendant at trial, and therefore, the trial court relied on the victim's in-court identification to find defendant guilty. The trial court expressly indicated that the identification of defendant by the victim was not, by itself, the determining factor in finding defendant guilty. The trial court stated that defendant was also identified by a police officer at the scene—who observed defendant standing in the victim's driveway with a television in his hand. Defendant's contention is further

undermined by the fact that "positive identification by witnesses may be sufficient to support a conviction of a crime[,]" *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) (citation omitted), and defense counsel cross-examined the victim regarding his identification of defendant. See *id.* at 704, citing *United States v Wade*, 388 US 218, 231-232; 87 S Ct 1926; 18 L Ed 2d 1149 (1967) ("the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification."). Thus, defendant fails to establish that his due-process rights were violated by the victim's in-court identification of defendant.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because defense counsel failed to move to suppress (1) the photographic identification procedure, (2) the victim's pretrial identification testimony, and (3) the victim's in-court identification of defendant. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"Generally, an ineffective assistance of counsel claim presents a mixed question of fact and constitutional law." *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019) (citation omitted). "Constitutional questions are reviewed de novo[.]" *Id.* "[F]indings of fact are reviewed for clear error." *Id.* "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006) (citation omitted). Defendant filed a motion for a new trial, raising the issue of ineffective assistance of counsel. Thus, defendant's issue is preserved. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). However, because the trial court denied defendant's motion for a new trial and declined to conduct a *Ginther*[2] hearing to determine whether defense counsel was ineffective, this Court's review is limited to mistakes apparent from the record. *People v Lane*, 308 Mich App 33, 68; 862 NW2d 446 (2014) (citations omitted); *People v Rockey*, 237 Mich App 74, 77; 601 NW2d 887 (1999) ("[I]n making the testimonial record necessary to support a claim of ineffective assistance of counsel, the testimony of trial counsel is essential. The absence of such testimony limits this Court's review to what is contained in the record.") (citations omitted).

## B. ANALYSIS

The Sixth Amendment states, in relevant part: "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defense." US Const, Am VI. "The right to counsel guaranteed by the Michigan Constitution is generally the same as that guaranteed by the Sixth Amendment; absent a compelling reason to afford greater protection under the Michigan Constitution, the right to counsel provisions will be construed to afford the same protections." *Hoang*, 328 Mich App at 63, quoting *People v Marsack*, 231 Mich App 364, 373; 586 NW2d 234 (1998). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (citation omitted).

In satisfying the first *Strickland* prong, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness[.]" *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted). "[A] defendant must 'overcome the strong presumption that counsel's performance was born from a sound trial strategy.' " *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015), citing *Trakhtenberg*, 493 Mich at 52, citing *Strickland*, 466 US at 689. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *Rockey*, 237 Mich App at 76. The fact that defense counsel's strategy "ultimately failed does not constitute ineffective assistance of counsel." *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant asserts that if defense counsel had moved to suppress the photographic identification procedure, then the victim's in-court identification of defendant would not have been admitted. Defendant's assertion is without merit. As already discussed, defendant fails to demonstrate that the photographic identification procedure was improper or suggestive. Therefore, had defense counsel moved to suppress the photographic identification procedure, the motion would have been futile. "Trial counsel is not ineffective for failing to advocate a meritless position." *People v Payne*, 285 Mich App 181, 191; 774 NW2d 714 (2009).

Defendant also asserts he was denied the effective assistance of counsel because defense counsel failed to move to suppress the victim's pretrial identification testimony. Defendant argues that the victim's pretrial identification testimony was tainted, and that without the tainted testimony, defendant would not have been found guilty. "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial." *Kurylczyk*, 443 Mich at 303.

During trial, the victim testified that at the photographic identification procedure, he stared at the photographic array for approximately 10 minutes before choosing a photograph. The victim said his first in-court identification of defendant as the perpetrator occurred at defendant's preliminary examination, and that at the preliminary examination he continued to believe defendant was the man he chose from the array. The photograph the victim chose was not defendant's photograph, consequently, the victim's misidentification did not serve to convict defendant. The failure of the victim to choose defendant from the photographic array went to the weight of the victim's in-court identification of defendant, not its admissibility. *Gray*, 457 Mich at 124 ("any evidence of the victim's lack of certainty would be relevant to the weight that the evidence should be given, but not to its admissibility."). While the trial court may have had reason to question the credibility of the victim's in-court identification of defendant, in light of the victim's misidentification at the photographic identification procedure, the trial court apparently credited the victim's testimony, and this Court will not interfere with the trial court's credibility determinations. *Davis*, 241 Mich App at 700 ("The credibility of identification testimony is a

question for the trier of fact that we will not resolve anew."). In addition, the victim denied that he identified defendant as the perpetrator merely because defendant was seated at defense counsel's table. Therefore, defendant fails to establish any basis on which the victim's pretrial identification testimony could have been suppressed. *Kurylczyk*, 443 Mich at 303.

There was no need to establish an independent basis for the victim's in-court identification of defendant because, as already discussed, the photographic identification procedure was not improper or impermissibly suggestive. *Barclay*, 208 Mich App at 675. Further, the trial court found defendant guilty on the basis of the in-court identification of defendant as the perpetrator by the victim and Officer Butters. The trial court explained that Officer Butters identified the victim as the person he saw in the victim's driveway—with the television in his hand—at the scene of the crime. Moreover, the trial court found that the circumstance under which defendant was arrested was also indicative of defendant's guilt. Sergeants Dunning and Machon found defendant hiding in the rafters of the garage, and wearing running shorts and a t-shirt when it was cold outside with snow on the ground. Sergeant Dunning believed defendant was the individual who ran from the victim's home because he had bruised knees and cuts all over his arms, suggesting that defendant ran through some type of brush or backyard foliage. Thus, defendant fails to establish the factual predicate of his claim. *Carbin*, 463 Mich at 600.

In satisfying the second *Strickland* prong, "a defendant must show that . . . but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Again, the victim's photographic identification of defendant was not the basis of defendant's guilt, considering that the victim did not select defendant's photograph in the lineup. Rather, the trial court found defendant guilty on the basis of the in-court identification of defendant by the victim and Officer Butters, as well as the testimony of Sergeants Dunning and Machon. Therefore, even assuming defense counsel erred by failing to object to the photographic identification procedure or testimony, defendant fails to establish that but for defense counsel's failure, the result of the proceeding would have been different. *Carbin*, 463 Mich at 600.

IV. SENTENCING

Defendant argues that he should be resentenced because the trial court based its sentence on defendant's refusal to admit guilt. We disagree.

A. PRESERVATION AND STANDARD OF REVIEW

"To preserve a sentencing issue for appeal, a defendant must raise the issue 'at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.' " *People v Clark*, 315 Mich App 219, 223-224; 888 NW2d 309 (2016), quoting MCR 6.429(C) (citation omitted). Defendant failed to raise his issue at sentencing or in a proper motion for resentencing, and defendant failed to file a proper motion to remand in this Court. Thus, defendant's issue is unpreserved.

Because defendant's sentencing issue is unpreserved, this Court's review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763 ("Plain errors or defects

affecting substantial rights may be noticed although they were not brought to the attention of the court.") (citations omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* (footnote omitted). "Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.* at 763-764 (citation and quotation marks omitted).

## B. ANALYSIS

Defendant's sentence was within defendant's minimum sentencing guidelines range. At the sentencing hearing, defendant asserted his innocence, but expressed remorse for the victims. Notwithstanding that defendant's sentence was within his sentencing guidelines range, defendant now argues that the trial court improperly considered his refusal to admit guilt when it sentenced defendant. We disagree.

MCL 769.34 governs the sentencing guidelines. MCL 769.34(10) states:

(10) If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

While a court must score and consider the sentencing guidelines, the guidelines are advisory only. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "Notably, *Lockridge* did not alter or diminish MCL 769.34(10)." *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016). "Although the Legislature's [sentencing] guidelines are advisory, they 'remain a highly relevant consideration in a trial court's exercise of [its] sentencing discretion.'" *People v Odom*, 327 Mich App 297, 314-315; 933 NW2d 719 (2019), quoting *Lockridge*, 498 Mich at 391.

As a preliminary matter, this Court must affirm defendant's sentence because it falls within the recommended sentencing guidelines range. *Schrauben*, 314 Mich App at 196 ("When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information."). On appeal, defendant does not dispute that his guidelines range was correctly calculated or argue that the trial court relied on inaccurate information. Defendant does not dispute

that defendant's minimum sentence falls within his correctly calculated sentencing guidelines range. Therefore, MCL 769.34(10) requires this Court to affirm defendant's sentence. ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand.").

Next, defendant argues that he should be resentenced because the trial court based its sentence on defendant's refusal to admit guilt. We disagree.

"A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *Payne*, 285 Mich App at 193-194, quoting *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). "However, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *Id*. "We look to three factors to determine if a sentencing court improperly considered a defendant's refusal to admit guilt: '(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.' " *Payne*, 285 Mich App at 194, quoting *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987).

The first *Wesley* factor is not at issue because defendant maintained his innocence at the sentencing hearing. See *Payne*, 285 Mich App at 194 (citation omitted). However, the second and third *Wesley* factors are contested. Defendant argues that the second *Wesley* factor is satisfied because the trial court stated that defendant needed to recognize that his decisions affected the victims. In particular, the trial court said: "[D]ecisions that you made have affected other people in a traumatic way, sir. And you need to recognize that." Contrary to defendant's assertion, and when read in full context, the trial court noted that defendant ought to recognize the consequences of his decisions as defendant moves on with his life, in an effort to better himself.

With regard to the third *Wesley* factor, defendant contends that his sentence would not have been as severe had he admitted guilt, because the trial court said, "[w]hat I find interesting is that Mr. Toomer you continue to maintain your innocence." Defendant's argument is unfounded. Again, defendant was sentenced within the guidelines. The trial court said the facts of this case undermined defendant's assertion of innocence, when it imposed defendant's sentence. "A trial court must articulate its reasons for imposing a sentence on the record at the time of sentencing." *People v Conley*, 270 Mich App 301, 312; 715 NW2d 377 (2006). When read in context, and in contrast to defendant's assertion, the trial court merely articulated its reasons for imposing defendant's sentence: "Mr. Toomer you continue to maintain your innocence; the facts say something totally different." The trial court's statements were more indicative of acknowledging defendant's lack of remorse, with regard to defendant's potential for rehabilitation. *Dobek*, 274 Mich App at 104. The trial court explained that it hoped defendant bettered himself, and said it was up to defendant to do so. Also, defendant's minimum sentence was at the high-end of the guidelines range because he was already serving a three-year term of probation for second-degree home invasion, at the time he committed the subject offense.

While it is true that defendant maintained his innocence after he was convicted, nothing in the record suggests that the trial court attempted to get defendant to admit guilt, or would have been more lenient had defendant admitted guilt. Therefore, resentencing is not warranted. See

*Dobek*, 274 Mich App at 106 ("Considering the *Wesley* factors, we cannot conclude that defendant maintained his innocence after conviction, that the trial court attempted to make defendant admit guilt, or that the sentence would not have been as severe had defendant affirmatively admitted guilt.").

Affirmed.


/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola