*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

NICHOLE CHRISTINE JOLY,

Defendant-Appellee.

FOR PUBLICATION
March 11, 2021
9:25 a.m.

No. 354379
Jackson Circuit Court
LC No. 18-002466-FC

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

SWARTZLE, P.J.

The government knowingly breached defendant's attorney-client privilege. Rather than try to mitigate the breach, the government deliberately used information obtained from the privileged communication to obtain incriminating physical evidence. The government then charged defendant with several crimes, and it made clear that it intended to use the physical evidence at trial. Thus, the record on appeal confirms that the government knew of the privilege; deliberately intruded into it; and defendant was actually and substantially prejudiced.

This constituted a violation of due process, not just the common-law privilege. Accordingly, for the reasons more fully explained below, we affirm the trial court's suppression of the physical evidence.

## I. BACKGROUND

This is the second time that this case has been before our Court. As the prior panel of this Court explained,

Defendant's home was intentionally set on fire and his two dogs perished in the blaze. Detective Aaron Grove investigated defendant as a suspect. Detective Grove obtained a warrant to search defendant's new home and the electronic devices of defendant and his partner, Christina Moore-Sharon. Detective Grove forwarded the seized electronic devices to a laboratory for forensic analysis. The analyst searched for certain words related to the arson and discovered an email. In

-1-

that email, defendant shared the names of the individuals to whom he had given his lawnmower and gas can. Detective Grove had been searching for those items because he believed they were connected to the fire. Detective Grove interviewed the individuals named in the email and retrieved the gas can and lawnmower.

Defendant moved to suppress the email on the ground that is was protected by the attorney-client privilege, as well as the derivative evidence obtained from it. The trial court determined that the email was not privileged and denied his motion. [*People v Joly*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 2020 (Docket No. 348672) (*Joly I*"), pp 1-2.]

The panel concluded that the attorney-client privilege protected the e-mail. *Id*. at 3. It remanded the case to the "trial court to address defendant's contention that there was a constitutional violation requiring suppression of the derivative evidence via the fruit-of-the-poisonous-tree doctrine." *Id*. at 4. The derivative evidence is the lawnmower and gas can.

On remand, the parties submitted a set of stipulated facts to the trial court. The stipulation and the undisputed record establish the following additional facts: In August 2017, Jackson Police Department opened an investigation into the suspected arson. In September 2017, the Abood Law Firm advised the Jackson County Prosecutor's Office that defendant had retained the firm as legal counsel. Several months later, in February 2018, law enforcement executed a search warrant for a tablet computer. From this tablet, law enforcement intentionally pulled an e-mail between defendant and Jeffrey John Abood, an employee of the Abood Law Firm. Abood's e-mail address was jabood@aboodlaw.com.

In September 2018, the government charged defendant with one count of first-degree arson, MCL 750.72, and two counts of animal torture, MCL 750.50b. At the preliminary examination, Detective Grove testified that the Michigan State Police (MSP) forensic laboratory produced the e-mail to him. Detective Grove testified that he knew that defendant and defendant's attorney were parties to the e-mail. As the parties stipulated, "That based on the foregoing, the Government was objectively aware of an ongoing personal attorney-client relationship" and "Detective Grove had not obtained a waiver of attorney-client privilege from the Defendant." The stipulation continued:

10. That because the email was from Defendant and addressed to jabood@aboodlaw.com, on its face, the email appeared to be covered by the attorney-client privilege. The technician intentionally opened and viewed the email and other emails of the Defendant. The substance of the email looked like it was attorney-client privileged subject matter. The technician intentionally turned that email over to law enforcement.

11. That Detective Grove testified that he knew that one of the parties on the email was Defendant's attorney. Detective Grove intentionally viewed the email, conducted an investigation based on its contents, included its contents in a written incident report, and turned it over to the Prosecutor's Office. Acting on information contained in the email, Detective Grove recovered certain evidence. Said evidence was used against Defendant at his preliminary examination.

12. That the People likewise intend to use the aforementioned evidence against Defendant at trial.

During the trial court's evidentiary hearing, defense counsel argued that defendant's rights to remain silent and due process were violated by the breach of the attorney-client privilege. Defense counsel argued that suppression of the derivative evidence was the proper remedy. The prosecutor rejoined that the prosecution did not intend to introduce the e-mail at trial. The prosecutor also claimed that defendant was asking the trial court to constitutionalize the attorney-client privilege.

The trial court issued a written opinion suppressing the derivative evidence. At the outset of its opinion, the trial court drew guidance from two federal appellate court decisions, *United States v Voigt*, 89 F3d 1050 (CA 3, 1996) and *United States v Kennedy*, 225 F3d 1187 (CA 10, 2000). Using the 3-part test set forth in those decisions, the trial court first found as a factual matter that the government was aware of the attorney-client relationship between defendant and the Abood Law Firm. It next concluded, in its words, "easily" that "the government deliberately intruded" into the attorney-client relationship. The trial court noted that the detective admitted to knowing about the relationship, "and with that knowledge availed himself to the contents of the email, nonetheless." Finally, the trial court determined that defendant would suffer actual and substantial prejudice if the evidence derived from the email was not suppressed. The trial court recognized that, while the detective was aware of a lawnmower and gas can and that they might be relevant to the investigation, "there is nothing to indicate that the state, except for information contained in the email, would have acquired the evidence." (The prosecutor did not argue inevitable discovery.) Accordingly, although the trial court observed that the government's actions did not necessarily "shock it's conscience," the actions did violate defendant's right to due process under the test found in *Voigt* and *Kennedy*.

This interlocutory appeal followed.

## II. ANALYSIS

On appeal, the prosecutor maintains that the trial court erred by "constitutionalizing" the attorney-client privilege. The trial court has done something that no other court in the nation has done—suppress derivative evidence, so-called "fruit of the poisonous tree," based solely on the violation of the common-law privilege. In doing so, the trial court misread and extended *Voigt* and its progeny beyond their intended scope. On these grounds, the prosecutor asks that we reverse the trial court. As we explain, however, the trial court did not do what the prosecutor claims it did, and, as the record make quite clear, the government's actions here violated defendant's right to due process.

This Court reviews de novo a trial court's decision on a motion to suppress. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). It also reviews de novo questions of constitutional law. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). A trial court's findings of fact are reviewed for clear error. *Hyde*, 285 Mich App at 436.

## A. THE ATTORNEY-CLIENT PRIVILEGE

Our judicial system is predicated on the adversarial process. Unlike some other legal systems, the American system, brought here by English colonists and subsequently evolved over the centuries, "is grounded on competing factual and legal arguments presented by adverse parties." *In re Smith*, __ Mich App __; __ NW2d __, slip op at 3. The truth-seeking function of the judicial process depends on a party subjecting all of the evidence—its own and the opposing party's evidence—to the crucible of critical analysis, cross examination, and forceful argument.

This adversarial process requries several components to achieve its public end. These include, among other things, a neutral arbiter, even-handed procedures, rational evidentiary rules, and well-prepared advocates. With respect to the latter, for an advocate to be well-prepared, the advocate must have the opportunity to be well-informed by the client.

The attorney-client privilege is one of the means for ensuring well-prepared, well-informed advocates. See *People v Johnson*, 203 Mich App 579, 585; 513 NW2d 824 (1994). "Indeed, the attorney-client privilege is based upon the wise policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing secrets to this professional advisor." 81 Am Jur 2d, Witnesses, § 319, p 324. For this and other reasons, "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co v United States*, 449 US 383, 389; 101 S Ct 677; 66 L Ed 2d 584 (1981) (citation omitted). As the U.S. Supreme Court has observed, "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The Supreme Court has further recognized that the privilege serves two related purposes: "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390 (citation omitted). In other words, the attorney-client privilege is intended to protect both sides of the two-way street of information exchange between the attorney and client.

In Michigan, the attorney-client privilege has both common-law and statutory roots. The privilege has long been recognized as part of our state's common law. *Passmore v Passmore's Estate*, 50 Mich 626, 627; 16 NW 170 (1883). Additionally, our Legislature codified the privilege in the state's criminal code. MCL 767.5a(2). Our rules of evidence provide for the privilege, MRE 501, and our professional rules of conduct give practical guidance for the implementation of the privilege, MRPC 1.6, 1.9.

This is all to say that the attorney-client privilege is a cornerstone of our system of jurisprudence.

## B. ISSUES NOT ON APPEAL

We begin our analysis by noting what is *not* on the table. The prosecutor conceded before the trial court that the inevitable-discovery rule does not apply. See *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). The prosecutor has not argued that the email between defendant and the Abood Law Firm was subject to the crime-fraud exception, see *People v Paasche*, 207 Mich App 698, 705; 525 NW2d 914 (1994), and our review of the record

confirms that nothing in the communication was in furtherance of a crime. The prior panel held that the email was privileged, and under the law-of-the-case doctrine, that conclusion is binding on us. See *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). Relatedly, the canon of construction that the privilege should be strictly construed does not apply, see *People v Warren*, 462 Mich 415, 427-428; 615 NW2d 691 (2000), contrary to the prosecutor's argument, because the privilege has already been construed by the prior panel, and that panel found that the privilege applied to the email, *Joly I*, unpub op at 4. We do, however, agree with the prosecutor that the Sixth Amendment right to counsel is not implicated here, because all of the relevant events occurred before charges were brought against defendant. *Rothgery v Gillespie Co*, 554 US 191, 198; 128 S Ct 2578; 171 L Ed 2d 366 (2008). And finally, the Fifth Amendment right against self-incrimination is not squarely before us, as the prosecutor has agreed that the email is not admissible and there is no suggestion that either defendant or counsel will somehow be forced to provide testimony in this matter. *People v Marsack*, 231 Mich App 364, 375; 586 NW2d 234 (1998).

This puts defendant's claim involving the right to due process of law squarely before us, and we turn to this next.

## B. THE RIGHT TO DUE PROCESS OF LAW

As noted in the preceding section, the Sixth Amendment right to counsel does not attach until and unless criminal proceedings are initiated against a defendant. This does not, however, give the government license to ignore a defendant's right to due process prior to such proceedings, and this process may include certain aspects involving defense counsel. As explained by the *Kennedy* court, "[A] defendant may claim his or her rights under the Due Process Clause have been violated by [governmental] misconduct occurring prior to indictment." *Kennedy*, 225 F3d at 1194; see also *Coplon v United States*, 89 US App DC 103, 111-112; 191 F2d 749 (1951); cf *Abela v GMC*, 469 Mich 603, 607; 677 NW2d 325 (2004) (explaining that, although lower federal court decisions are not binding on state courts, they may be persuasive).

Under our state and federal Constitutions, a person cannot be deprived of life, liberty, or property without due process of law. Const 1963, art 1, § 17; US Const, Ams V and XIV, § 1. In the context of criminal proceedings, the "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v California*, 314 US 219, 236; 62 S Ct 280; 86 L Ed 166 (1941). This is a relatively high bar—only if "the absence of that fairness fatally infected" the judicial process will there be a violation of due process. *Id.* In analyzing the issue, courts look to the "totality of the circumstances." *Withrow v Williams*, 507 US 680, 689; 113 S Ct 1745; 123 L Ed 2d 407 (1993).

The prosecutor is correct to point out that the attorney-client privilege is not a constitutional right. *Lange v Young*, 869 F2d 1008, 1012 n 2 (CA 7, 1989). Violation of the privilege is not, by itself, tantamount to a due-process violation and alone does not warrant suppression of derivative evidence. See *Marsack*, 231 Mich App at 379. Similarly, violation of a defendant's statutory privilege does not, by itself, warrant suppression of evidence, as the Legislature has not seen fit to provide that remedy for a breach of MCL 767.5a. See *People v Hawkins*, 468 Mich 488, 507; 668 NW2d 602 (2003). These arguments only go so far, however, as violation of the common-law/statutory privilege can be one part of a broader claim that the government has violated a

defendant's right to due process. Case law has long recognized that outrageous misconduct by the government in detecting and obtaining incriminating evidence can rise to the level of a due-process violation. See, e.g., *Rochin v California*, 342 US 165, 172-173; 72 S Ct 205; 96 L Ed 188 (1952); *Kennedy*, 225 F3d at 1194.

If a defendant's right to due process has been violated, then the next question is what remedy should be imposed? The remedy depends critically on the violation and context. If, for example, the due-process violation occurred during trial, then an appropriate remedy might be to order a new trial. When the violation occurs in the context of gathering pretrial evidence, courts have developed a remedy referred to as the "exclusionary rule." Applied to the states by the U.S. Supreme Court in *Mapp v Ohio*, 367 US 643, 656; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), the exclusionary rule provides for the exclusion of evidence that was obtained as a result of a fundamentally unfair investigatory process, *United States v Taylor*, 764 F Supp 2d 230, 235 (D Me, 2011) (noting that, in a similar context, "if something was seized improperly, the remedy is suppression of the item and perhaps its fruit"). The purposes of the exclusionary rule are to compel respect for constitutional rights, deter violations of those rights, and preserve judicial integrity. *Mapp*, 367 US at 656, 659.

Generally speaking, state and federal courts have used the exclusionary rule to remedy violations of due process for decades. With that said, in the more specific context of the attorney-client privilege, although courts have recognized that exclusion of evidence might be an appropriate remedy when violation of the privilege rises to the level of fundamental unfairness, the remedy has rarely needed to be used. We consider next several court decisions that have already considered this issue.

## C. VIOLATION OF DUE PROCESS PREDICATED ON INTRUSION INTO ATTORNEY-CLIENT COMMUNICATIONS

In *Voigt*, the U.S. Court of Appeals for the Third Circuit set out the prevailing due-process test involving attorney-client communications. In that case, the court reviewed the existing caselaw and concluded that only a finding of "outrageousness" would warrant the exclusion of evidence for violation of due process. *Voigt*, 89 F3d at 1067. To make a colorable claim of "outrageousness," a defendant must show all of the following: "(1) the government's objective awareness of an ongoing, personal attorney-client relationship between [the attorney] and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice." *Id.* (cleaned up).

Applying this 3-part test, the court initially faulted the trial court for failing to hold a pretrial evidentiary hearing on defendant's claim that the government intentionally violated the attorney-client privilege and, in doing so, violated his right to due process. *Id*. at 1067-1068. The court went on and concluded, however, that the record at trial conclusively showed that the government was not aware of the relationship for part of the relevant time period, and with respect to the other relevant time period, defendant had not shown that the information was, in fact, privileged or that he was prejudiced in any way. *Id*. at 1068-1069. Given this, the court concluded that defendant had not satisfied the 3-part test and affirmed his convictions.

Other courts faced with similar claims have rejected them based on the defendant's failure on one or more of the three parts. For example, the U.S. Court of Appeals for the First Circuit did not require suppression of evidence intercepted as a result of a breach of the attorney-client privilege. *United States v Charles*, 213 F3d 10, 20 (CA 1, 2000). In *Charles*, law enforcement secured a wiretap of the defendant's telephone. *Id*. at 13. The court that authorized the wiretap prohibited law enforcement from intercepting privileged communications. *Id*. at 14. Nonetheless, a privileged communication was intercepted. *Id*. at 16. The officer who intercepted the call did not know at the time that the communication was privileged, as the officer did not hear the name of the defendant's attorney in the call. *Id*. Subsequent investigation revealed that the call was between the defendant and his attorney, and officers took steps to comply with the court's order involving privileged communication. *Id*. The defendant was subsequently indicted on the basis of information obtained via nonprivileged calls intercepted under the authorized wiretap. *Id*. The defendant moved to suppress all information obtained from the wiretap. *Id*. at 17-18.

On appeal, the First Circuit held that suppression was not proper because the privileged communication was intercepted innocently. *Id*. at 20. The court noted, however, that "in an extreme case of flagrant abuse of the law by state officials, where federal officials seek to capitalize on that abuse, this court might choose to exercise its supervisory powers by excluding ill-gotten evidence." *Id*. (cleaned up). The court highlighted that the officers acted in good faith and in an objectively reasonable manner. *Id*.

In another case, the U.S. Court of Appeals for the Seventh Circuit affirmed the district court's decision not to suppress evidence seized as a result of a breach of the attorney-client privilege. *United States ex rel Shiflet v Lane*, 815 F2d 457 (CA 7, 1987). In *Lane*, the defendant, seemingly at the direction of his attorney, told a private investigator (who worked for the attorney) that he killed his wife and where he hid her body. *Id*. at 460. The private investigator then told a deputy sheriff this information. *Id*. at 460-461. But, after obtaining this privileged information, the government took affirmative steps to avoid using it when obtaining subsequent search warrants. *Id*. at 466. The court noted that "the government's efforts to avoid using privileged information in an underhanded way" distinguished that "case from situations in which law enforcement agents deliberately invade the attorney-client relationship." *Id.*

In *United States v Segal*, 313 F Supp 2d 774, 776 (ND Ill, 2004), the government seized the defendants' computers and boxes, which contained communications protected by the attorney-client privilege. When the defendants accused the government of reviewing privileged communications, the government acknowledged that agents may have inadvertently done so. *Id*. at 777-778. The federal district court declined to suppress the evidence because "there [was] no evidence that the Government deliberately read communications that it affirmatively knew were protected by Defendants' attorney-client privilege." *Id*. at 780. The court noted that the government was simply negligent and that the government did not intend to introduce any derivative evidence obtained as a result of a breach of the attorney-client privilege at trial. *Id*. at 780-781.

In a pre-*Voigt* case (cited by the Third Circuit in *Voigt*), a federal district court went beyond suppression and dismissed the indictment against the defendant because it found that the government's conduct "was so outrageous that it shocked the universal sense of justice." *United States v Marshank*, 777 F Supp 1507, 1524 (ND Cal, 1991). In *Marshank*, the defendant's own

attorney, among other unethical actions, provided information to the government and actively worked with the government against the defendant. *Id*. at 1512-1513, 1516-1517. Government attorneys never informed the court about their work with the defendant's attorney and aided the attorney in hiding his dealings with them. *Id*. at 1524. The district court noted that the government showed a "complete lack of respect for the constitutional rights of the defendant . . . and an utter disregard for the government's ethical obligations." *Id*.

Based on our review of this and other case law, we believe that the *Voigt* court's 3-part test is a reasonable one, and we adopt it here as our own. We likewise agree with *Voigt*'s observation "that the judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." *Voigt*, 89 F3d at 1065 (citation omitted). With this test and judicial restraint in mind, we consider the government's conduct in this case.

We recognize that the government's conduct was not as outrageous as that in *Marshank*; this does not mean, however, that the conduct was not "outrageous" in terms of the 3-part *Voigt* standard. First, the undisputed facts—as stipulated to by both parties—confirm that the government was objectively aware of the ongoing, personal attorney-client relationship between defendant and the Abood Law Firm. The law firm proactively advised the prosecutor's office of the representation, months before law enforcement executed the warrant and seized defendant's emails. The email in question was clearly addressed to a member of the Abood Law Firm, and the detective testified that he knew that defendant and defendant's attorney were parties to the e-mail.

Second, the record shows that the government deliberately intruded into the attorney-client relationship. Admittedly, the deliberate intrusion did not occur through, for example, recruiting defendant's lawyer to cooperate in an investigation of defendant. It appears, instead, that an MSP technician came across the privileged email in the course of searching through other, non-privileged emails. In this day-and-age of electronic communications, it is not particularly surprising that law enforcement will occasionally come across a privileged communication that is mixed in with other, non-privileged materials. There are systems that can be put in place to screen out privileged materials proactively, see *Taylor*, 764 F Supp 2d at 233-235, though no system is fool-proof. In the case where a potentially privileged communication does get caught up in an otherwise lawful search, there are also steps that can be taken to identify and segregate privileged information from the rest, including filter agents or taint teams. See *id.* at 234-235.

Thus, it was not the apparent *inadvertent* discovery of the privileged email that is particularly troublesome here, but rather what happened *after* the discovery. After learning of the privileged email, the detective did not attempt to segregate the email, turn the case over to another detective or a different law-enforcement office, seek guidance from the court officer who signed the warrant, or work with the prosecutor to develop some other measure to separate the investigation from the privileged information that the detective learned from reading the email (and could not realistically unlearn). Instead, the detective doubled-down on the breach and used the privileged information to further his investigation of defendant. And the information in the email was not incidental or only marginally material, but instead provided the key information—the location—that the detective did not previously have about the lawnmower and gas can. There was, in other words, a direct link between the detective's reading of the email and his retrieval of both pieces of evidence. This can only be characterized as a deliberate intrusion into the substance of the attorney-client relationship.

As to the third element, there is no question that defendant suffered actual and substantial prejudice. No one disputes that the lawnmower and gas can are critical pieces of evidence in the prosecutor's case against defendant, and the prosecutor has made clear that the evidence will be offered at trial absent suppression. There is nothing in the record to suggest that the detective would have discovered the location of the evidence absent the email, and the prosecutor has not argued inevitable discovery. Given this, the third element is easily satisfied here.

This case presents a set of facts that other courts have acknowledged would have changed the outcome of their cases. In *Seagal*, 313 F Supp 2d at 780-781, for example, the court noted that the government was simply negligent, not deliberate, in its intrusion into the attorney-client relationship. In *Lane*, 815 F2d at 466, the court noted the government actively took steps to avoid using privileged information after another party—the investigator—passed on privilege information. In *Charles*, 213 F3d at 20, the court noted that the privileged information was innocently obtained and that the officers involved took steps to comply with court-ordered procedures. The *Charles* court also noted that the government in that case "acted in good faith and in an objectively reasonable manner." *Id*. (cleaned up).

The prosecutor on appeal does not seriously challenge the trial court's findings on any of the three elements of the *Voigt* test. Instead, the prosecutor argues that the trial court "constitutionalized" the attorney-client privilege, but as we have already explained, that is not what the trial court did. The privilege is not a constitutional right, and its breach alone does not warrant suppression of evidence, but this does not mean that the breach is irrelevant to a due-process challenge.

The prosecutor also argues that the trial court was confused because it did not actually conclude that the government acted outrageously here. The trial court did state that the government's actions did not "shock [the court's] conscience," but then the court continued with its analysis and considered the actions under the 3-part *Voigt* test, and it ultimately concluded that defendant had met the test. Where the prosecutor misses the mark on appeal is insisting that defendant is required to show something more than the three elements of the *Voigt* test. This is not the case; the *Voigt* test is—itself—the measure of whether government action was outrageous or not. If a defendant satisfies all three elements, then the defendant has shown that the government's actions were "outrageous" for purposes of due process. There is, in short, no additional showing, no "part 4" that needs to be proven, for a defendant to show that the government's actions were outrageous in this context.

## D. REMEDY FOR THE DUE-PROCESS VIOLATION

As to the remedy for violation of due process, we conclude that suppression of the physical evidence was appropriate here. The evidence obtained by the government in violation of defendant's right to due process is readily identified and isolated, so suppression is a straightforward remedy. Moreover, with respect to the violation itself, although presented in a rather matter-of-fact set of stipulated facts, a moment's reflection shows how brazen the government's actions were in this case. The government knew of the attorney-client relationship; it searched defendant's emails knowing of this relationship; it found a privileged communication; it took the information gleaned from the email and used the information for its investigation; based on the information, it found two critical pieces of physical evidence; and it informed the trial court

that it intended to use the physical evidence at trial notwithstanding the breach. At each step, the government could have paused and made a different decision, one that respected the privilege or at least sought to mitigate the damage from the breach, but this it did not do.

For support against suppression of the evidence, the prosecutor cites *United States v Warshak*, 631 F3d 266, 294 (CA 6, 2010). But *Warshak*'s relevance to this case is limited. In that case, the U.S. Court of Appeals for the Sixth Circuit noted "that it is unwise to extend the fruit-of-the-poisonous tree doctrine beyond the context of constitutional violations." *Id*. (citation omitted). We agree with this statement, but unlike that case, here there was a constitutional violation— defendant's right to due process. Furthermore, the *Warshak* court made this statement within the context of a *Kastigar* challenge; it did not engage in its own due-process analysis. See *id*. at 293-295 (discussing *Kastigar v United States*, 406 US 441; 92 S Ct 1653; 32 L Ed 2d 212 (1972)). And critically, the court observed that there was "no indication that the government made any direct use of the privileged communications, either at trial or before the grand jury." *Id.* at 294-295.

The prosecutor rejoins that suppression of the derivative evidence will thwart the trial court's truth-finding function. Similar arguments have been made by courts and commentators about the attorney-client privilege in general. See, e.g., 81 Am Jur 2d, Witnesses, § 272, p 285 ("Although an evidentiary privilege must be applied so as to effectuate its purpose, it is to be applied cautiously and with circumspection because it impedes the truth-seeking function of the adjudicative process."). We are mindful of this concern, though we are also mindful that, in certain extraordinary circumstances, "excluding relevant evidence has a public good transcending the normally predominate principle of utilizing all rational means for ascertaining truth." *Id.* at 285-286. Furthermore, as the U.S. Supreme Court observed in *Swidler & Berlin v United States*, 524 US 399, 408; 118 S Ct 2081; 141 L Ed 2d 379 (1998), "[T]he loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place. . . . [S]o the loss of evidence is more apparent than real." If courts are unwilling to suppress evidence when a breach of the attorney-client privilege results in a violation of due process, then the privilege's role in our adversarial system will be eroded. Accordingly, to promote respect for constitutional rights, deter violations of the same, and preserve judicial integrity, we conclude that the trial court properly suppressed the derivative evidence.

Finally, after oral argument on this second appeal, the prosecutor moved to remand for an evidentiary hearing. This matter has been extensively litigated, and the matter was the subject of a preliminary examination and hearing on remand after the first appeal. The parties stipulated to a detailed set of facts, and we are not inclined to give the prosecutor a third bite at the evidentiary apple. For these reasons, we deny the prosecutor's motion in a separate order issued with this opinion.

### III. CONCLUSION

Defendant and his attorney engaged in a privileged email exchange. The government was aware of the attorney-client relationship, and it discovered the privileged email while searching defendant's electronic tablet pursuant to a warrant. Rather than take steps to mitigate the breach of the privilege, the government exacerbated the breach by deliberately using the information

gleaned from the email to discover incriminating physical evidence. When pressed, the government made clear that it intended to use the physical evidence at trial, notwithstanding the breach. By these and the other actions detailed above, the government violated defendant's right to due process, and suppression of the physical evidence was an appropriate remedy.

Accordingly, we affirm the trial court's suppression of the physical evidence and, by separate order today, we deny the prosecutor's motion to remand for an evidentiary hearing. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick